AUGUSTA FREEBERG, as Administratrix, *vs.* ST. PAUL PLOW-WORKS.

Argued Dec. 18, 1891. Decided Jan. 18, 1892.

Master and Servant—Negligence of Master.—The cause *held* to have been properly dismissed, on the ground that plaintiff had failed to establish a cause of action.

Opinions of Experts, when Received in Evidence.—The opinion of experts as to whether a certain arrangement of machinery was dangerous cannot be received in evidence, where the facts are such that, when placed before a jury and explained to them, they are as competent as the witnesses to form an opinion as to whether or not it was safe.

Appeal by plaintiff from an order of the district court of Ramsey county, *Egan*, J., made August 5, 1891, refusing a new trial.

Action by Augusta Freeberg, as administratrix of the estate of Olgar Freeberg, deceased, against the St. Paul Plow-Works, a corporation, under 1878 G. S. ch. 77, § 2, as amended by Laws 1889, ch. 109.

Deceased was employed by defendant as a plow fitter at its factory in the village of Gladstone. While at work there, on August 21, 1890, he was accidentally killed. A driving shaft ran through the building overhead, near the ceiling. This shaft revolved very rapidly, and was held in place by hangers fastened to the ceiling. On it was a pulley on which there ran a two-inch leather belt, and reaching down near the floor this belt ran around a pulley on a drilling machine, and propelled it. Deceased took a moldboard to this drilling machine to have it countersunk. While waiting for this to be done, the belt ran off the drilling machine, and its lower loop was swinging free. It then slipped off the upper pulley onto the shaft.

Deceased took a pole, and attempted to replace the belt on the upper pulley. The belt then fell off on the other side of the pulley, and, being caught by the nuts on a face coupling in the shaft, was swiftly wound around it. Deceased was caught in the lower loop of this belt, and drawn up to the ceiling, and around the shaft, and expired within a few minutes.

The distance from the rim of the pulley to the face of the coupling on the shaft was about three inches. It was an eight-inch coupling, and the shaft was two and a half inches in diameter. The couplings were held together by four bolts, with six-cornered heads protruding about three quarters of an inch. On the other side was a screw-nut on the end of each bolt, of the same shape and proportions as the boltheads. The negligence complained of was the use of this coupling, pulleys, and belt in the proximity and manner described, without guards or covering to the coupling.

The issues were tried May 22, 1891. After the evidence was all given, defendant asked the judge to dismiss the action on the ground that no negligence of defendant was shown, and because the deceased was guilty of contributory negligence, and because the accident was one of the risks of the employment. The request was granted, and the action dismissed. Plaintiff moved for a new trial. It was denied, and he appealed.

*Arctander & Arctander,* for appellant.

It is only where there is an entire absence of evidence tending to establish negligence that a court can enter upon the province of the jury, order a nonsuit, or direct a verdict for defendant. *Bennett* v. *Syndicate Ins. Co.,* 39 Minn. 254; *Abbett* v. *Chicago, M. & St. P. R. Co.,* 30 Minn. 482; *Craver* v. *Christian,* 34 Minn. 397; *Potter* v. *Mellen,* 36 Minn. 122; *Warner* v. *Rogers,* 23 Minn. 34.

Plaintiff was, on this motion for a new trial, entitled to the most favorable view of the testimony introduced. The rule goes so far that, where any substantial facts are in dispute, the plaintiff is upon this motion entitled to the most favorable view of them. On the question of nonsuit, all disputed facts are to be decided in favor of the plaintiff. *Cook* v. *New York Cent. R. Co.,* *42 N. Y. 476. Proof of negligence, if it exceeds a mere *scintilla* of evidence, is sufficient to send

the case to the jury.  *Pennsylvania R. Co. v. Horst*, 110 Pa. St. 226.

The question to be decided in this case was not whether the coupling, as a coupling and standing alone, was all right; not whether the naked revolving shaft was working properly; not whether the pulley, in and by itself, was a proper pulley; not whether the belt running from the ceiling to the floor was sufficient and of proper material; but whether the combination of all of these things, in the condition in which they respectively were, and in their probable influence on each other, in the juxtaposition to each other in which they were placed by defendant, was a reasonably safe appliance; and whether defendant had exercised ordinary and reasonable care in establishing such a mantrap near a passageway in the shop where the employes were expected to go in the discharge of their duties.  Can it, under these circumstances, be said, as a matter of law, that here was no evidence from which a reasonable mind could draw the conclusion of negligence?  *Wabash Ry. Co. v. McDaniels*, 107 U. S. 454; *Larson* v. *Ring*, 43 Minn. 88.

Was there evidence of assumption of risk so as to warrant taking the case away from the jury?  Under the state of facts in this case, plaintiff might well admit the doctrine of assumption of risk as far as any court has claimed.  But the temptation to criticise somewhat this rule of late origin, which carried to its extreme has provoked so much injustice, is too great to be resisted.  An express contract upon the part of a passenger to assume the risk of the negligence of the company and its agents, although made for a valuable consideration, is void as against public policy, and is generally so held to be.  It has been so decided in this court.  An express contract relieving the master from damages resulting from his negligence has only been held valid in the English courts, and by the supreme court of Georgia, as far as our research goes.  The following cases unflinchingly hold it void, as against public policy:  *Roesner v. Hermann*, 8 Fed. Rep. 782; *Lake Shore & M. S. Ry. Co.* v. *Spangler*, 44 Ohio, 471; *Little Rock & Ft. S. Ry. Co.* v. *Eubanks*, 48 Ark. 460.

Now, if an express contract to this effect would be void, how can an implied contract in which the servant, by an imaginary operation of law, without saying a word, or having the matter called to his at-

tention by a syllable or suggestion, be valid? By it he agrees to discharge his master from any and all negligence of which the servant is aware, and of which he might, by the exercise of ordinary care, become aware. There are only two ways out of this. Either the doctrine of assumption of risks must be limited to those inevitable dangers which flow from the business or occupation itself, and which no degree of care on the part of the master could avert, (and in that case the servant could not recover simply on the ground that there was no negligence on which to base the action,) or else the doctrine must be wholly abandoned, except in the case of continuing his work in face of the danger. And this would be recklessness amounting to contributory negligence. In such a case, we have no need of any new-fangled doctrine of assumption of risk, but can rest on the broader and better-settled basis of contributory negligence.

The rule that the servant takes the risk of the service presupposes that the master has performed the duties of caution, care, and vigilance which the law casts upon him. It is those risks only which cannot be obviated by reasonable precaution by the master that the servant assumes. *Pantzar* v. *Tilly Foster Iron Mining Co.*, 99 N. Y. 368; *Mulcairns* v. *Janesville*, 67 Wis. 24, 35, 36. It is implied in the same contract that the master shall supply the physical means and agencies for the conduct of the business. It is also implied, and public policy requires, that in selecting such means he shall not be wanting in proper care. His negligence in that regard is not a hazard usually or necessarily attendant upon the business. *Hough* v. *Railway Co.*, 100 U. S. 213; *Nadau* v. *White River Lumber Co.*, 76 Wis. 120; 1 Shear. & R. Neg. 361, 371; Wood, Mast. & S. § 384.

If the servant knows of the defects in any of the appliances, but does not know the danger or risks connected with the defect, he is held not to have assumed the risk. *Russell* v. *Minneapolis & St. L. Ry. Co.*, 32 Minn. 230; *Cook* v. *St. Paul, M. & M. Ry. Co.*, 34 Minn. 45; *Wuotilla* v. *Duluth Lumber Co.*, 37 Minn. 153; *McDonald* v. *Chicago, St. P., M. & O. Ry. Co.*, 41 Minn. 439; *Steen* v. *St. Paul & D. R. Co.*, 37 Minn. 310; *Clapp* v. *Minneapolis & St. L. Ry. Co.*, 36 Minn. 6; *Madden* v. *Minneapolis & St. L. Ry. Co.*, 32 Minn. 303.

Was there such evidence of contributory negligence as to author-

ize the court to take the case away from the jury? If Freeberg had at the time he was hurt taken any part in assisting in putting the belt on, which would have amounted to a volunteer act on his part, the defendant might talk of contributory negligence. If the belt had run off the upper pulley onto the coupling, and had been wound up and had caught him while he was in the act of pushing it up on the pulley, then he might well be said by this act to have contributed to his own injury, but not as it really was. The belter says that Freeberg did not do anything, nor in any manner assist in or meddle with the belt or contrivance, when caught. He obeyed the direction of the belter not to try to hold the belt on the upper pulley, and stepped back, before anything happened which brought about his death. With the vivid description which the belter gives of the affair, it certainly cannot be claimed that Freeberg was guilty of contributory negligence in not getting out of the way of the belt after it was caught, or after he saw it was caught, if he ever saw it. *Washington & G. R. Co.* v. *McDade,* 135 U. S. 554; *Clark* v. *Chambers,* 3 Q. B. Div. 327.

Plaintiff offered to show by the expert, Shulz, that the combination of a coupling like this, in such close proximity to the pulley, with a belt of this size, was an extremely dangerous appliance; offered to show that the combination and appliance could have been made safe by providing a safety coupling, or by providing a covering for the coupling that was there. This was refused. The evidence should have been received. *Fitts* v. *Cream City R. Co.,* 59 Wis. 323; *Sowden* v. *Idaho Q. Min. Co.,* 55 Cal. 443; *Grand Rapids & I. R. Co.* v. *Huntley,* 38 Mich. 537; *Transportation Line* v. *Hope,* 95 U. S. 297; *Hayward* v. *Knapp,* 23 Minn. 430; *Clapp* v. *Minneapolis & St. L. Ry. Co.,* 36 Minn. 6.

*John D. O'Brien,* for respondent.

The doctrine that a mere *scintilla* of evidence is sufficient to send the case to the jury is now virtually discarded in American courts, and wholly so in the English courts. 16 Amer. & Eng. Enc. Law, 466, note 3. It is not followed in the federal courts; it has been repeatedly repudiated by the federal supreme court, and also by many state courts. Decided cases may be found where it is held that, if

there is a mere *scintilla* of evidence in support of a case, the judge is bound to leave it to the jury; but the modern decisions have established a more reasonable rule, to wit, that, before the evidence is left to the jury, there is or may be a preliminary question for the judge, not whether there is literally no evidence, but whether there is any evidence upon which the jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. *Marion Co. Com'rs* v. *Clark*, 94 U. S. 278, 284; 11 Amer & Eng. Enc. Law, 244, note; *Cooper* v. *Waldron*, 50 Me. 80; *Morton* v. *Inhabitants of Frankfort*, 55 Me. 46; *Mason* v. *Lewis*, 1 G. Greene, 494; *Bailey* v. *Kimball*, 26 N. H. 351; *Colt* v. *Sixth Ave. R. Co.*, 49 N. Y. 671.

The rulings of the supreme court of this state seem to be in accord with the above cases. It is a trite doctrine in this state that, where the trial court would feel obliged to set aside a verdict for the plaintiff, it may direct a verdict for the defendant. *Thompson* v. *Pioneer Press Co.*, 37 Minn. 285.

Decedent's death resulted from being caught by a belt which had run off the driving pulley, either while he was in the act of adjusting or assisting to adjust the same, or just a moment after he had desisted and stood by watching the operation out of a spirit of curiosity. The negligence with which defendant is charged consists in placing the pulley in such close proximity to the coupling, without protecting the latter against this alleged danger of catching a displaced belt. This, it is claimed, might have been accomplished by means of several devices, such as a " safety " or " compression " coupling or a safety hook, or a sheet-iron sleeve or covering over the coupling. The inquiry in the present case is not whether the defendant committed a breach of a legal duty, but, on the contrary, whether a legal duty exists requiring such couplings to be covered or protected when in close proximity to a pulley. This is purely a question of law, which plaintiff had the *onus* of proving to the satisfaction of the court, and there is no dispute about the facts, or the inference that might be drawn from them. An essential element of actionable negligence is a legal duty. There can be no fault or negligence or breach of duty where there has not been an act or a serv-

ice which the defendant was bound to perform. *Trask* v. *Shotwell,* 41 Minn. 66.

Negligence consists (1) of a legal duty; (2) its breach; and (3) damages resulting proximately therefrom. And the question whether a legal duty to the party injured existed is one of law, and therefore for the court to pass upon. Whether there has been a breach of that duty, and whether it proximately caused damage to plaintiff, are questions which depend upon circumstances, and therefore are usually to be determined by the jury. 16 Amer. & Eng. Enc. Law, 463, 464; Shear. & R. Neg. § 11; *Sutton* v. *New York Cent. & H. R. R. Co.,* 66 N. Y. 243.

It is not actionable negligence *per se,* as between master and servant, to omit to protect or cover dangerous machinery. The burden of proof rests upon the plaintiff. *Carroll* v. *Williston,* 44 Minn. 287; Shear. & R. Neg. (3d Ed.) § 11; *Goodnow* v. *Walpole Emery Mills,* 146 Mass. 261; *Titus* v. *Bradford, etc., R. Co.,* 136 Pa. St. 618; *Larson* v. *St. Paul, M. & M. Ry. Co.,* 43 Minn. 423; *Doyle* v. *St. Paul, M. & M. Ry. Co.,* 42 Minn. 79; *Sullivan* v. *India Mfg. Co.,* 113 Mass. 396.

Conceding that the manner in which the defendant maintained its machinery was negligent, such negligence was not the proximate cause of the injury to the decedent. The evidence shows that the belt first came off on the hanger side. If it had been left there, no accident could have occurred. The decedent himself took a pole, and placed the belt on the top of the pulley, from which it slipped off on the other side, and caught upon the protruding bolts. He was thus not only the author of his own misfortune, but he supplied by his own act the connection between the alleged negligence of the defendant and the accident. In order to warrant a recovery by one for the negligence of another, there must be a direct and causal connection between the accident and the negligence complained of. There must be no break between an alleged cause and its effect,—no intervening new line of causation. If the accident would not have happened but for the interposition of an intermediate act of the person injured, there can be no recovery. *Larson* v. *St. Paul & D. Ry. Co.,* 43 Minn. 488; Whart. Neg. § 149; *Kuhn* v. *Jewett,* 32 N. J. Eq. 647.

Deceased assumed the risk of the employment. The cause of the accident was a danger incident to the employment, and hence a risk which he had assumed. Some employments are essentially hazardous; and the servant not only assumes the risks necessarily incident thereto, and which are patent, but also those risks which, by the use of proper diligence, are discoverable by him; and he takes on himself risks that arise by reason of neglect on the part of the master if they be known to him, or by the use of proper diligence are discoverable by him. And, as a general rule, he also assumes such extraordinary risks as he may knowingly and voluntarily see fit to encounter. *Madden v. Minneapolis & St. L. Ry. Co.*, 32 Minn. 303; *Cook v. St. Paul, M. & M. Ry. Co.*, 34 Minn. 45; *Sullivan v. India Mfg. Co.*, 113 Mass. 396; *Anderson v. Minnesota & N. W. R. Co.*, 39 Minn. 523; *Kelley v. Chicago, M. & St. P. Ry. Co.*, 53 Wis. 74; *Behm v. Armour*, 58 Wis. 1.

Where the uncontroverted facts of the case show contributory negligence on the part of the plaintiff, it is proper for the court to rule, as a matter of law, that the plaintiff cannot recover. *Donaldson v. Milwaukee & St. P. Ry. Co.*, 21 Minn. 293; *Ludwig v. Pillsbury*, 35 Minn. 256; *Hefferen v. Northern Pac. R. Co.*, 45 Minn. 471; *Baltimore & O. R. Co. v. Depew*, 40 Ohio St. 121, 127; *Mann v. Oriental Print Works*, 11 R. I. 152.

In the present case no special *expert* knowledge of mechanics was requisite to a solution of the question presented. It was such as men of ordinary intelligence were capable of determining. Witnesses are to be examined only as to the facts; it is not their province to determine the inferences or conclusions to be drawn therefrom. Whether this or that act of plaintiff or defendant was negligence, and whether due care required this or that to be done, are not matters for expert testimony. *Mantel v. Chicago, M. & St. P. Ry. Co.*, 33 Minn. 62; *Derosia v. Winona & St. P. R. Co.*, 18 Minn. 133, (Gil. 119;) *Goodsell v. Taylor*, 41 Minn. 207; *Stillwater Turnpike Co. v. Coover*, 26 Ohio St. 520; *City of Parsons v. Lindsay*, 26 Kan. 426; *Village of Fairbury v. Rogers*, 98 Ill. 554.

MITCHELL, J. This was an action to recover for the death of plaintiff's intestate, caused by the alleged negligence of the defend-

ant, in whose employment he was as a plow-fitter in its factory at Gladstone. When the plaintiff rested, the defendant moved to dismiss the action on the grounds: (1) That there was no evidence of negligence on part of the defendant; (2) that the deceased had assumed the risks; (3) that he was guilty of contributory negligence. The court granted the motion, placing its decision mainly on the ground that there was no evidence of defendant's negligence. As we are of opinion that the action of the court must be affirmed, it will subserve no good purpose to attempt to state or review the evidence at any great length. In fact, it would be impossible to do so fully or satisfactorily, within any reasonable limits. A perusal of the entire record satisfies us that, while her counsel has exhibited great ingenuity in the presentation of the evidence, the plaintiff's case was an exceedingly weak one at every point. The negligence complained of was in setting a drilling machine (operated by the aid of pulleys and a belt connected with a main driving shaft) in such close proximity to a "face" coupling on the shaft that when the belt jumped from the pulley (which frequently occurred) and dropped upon the shaft, and came in contact with the coupling, it was very liable to be caught by the uncovered nuts and ends of bolts projecting from the face of the coupling, and then be wound up around the shaft. The alleged negligence consisted in placing the pulley and belt in such close proximity to such a coupling, when such a thing was so likely to happen, it being claimed that the defendant ought to have either placed the pulley and belt further from the coupling, or else covered the nuts and bolts, or used another kind of coupling, called the "flange" or "safety" coupling. The accident occurred as follows: The deceased had occasion to carry a moldboard from his bench to the drill to have it countersunk by the driller. While he was awaiting this being done the belt came off the driven pulley on the drilling machine, and then from the larger pulley on the driving shaft above, dropping on the shaft on the opposite side of the pulley from the "coupling." The deceased's duties had nothing to do with the belts and pulleys, but the defendant kept a man called a "belter" for that business, whose duty it was when a belt came off to put it on. The deceased, however, took a stick, and attempted to put the belt

back on the pulley.   The driller at first seems to have attempted to help him, but, being afraid, went and called the belter, who was in the blacksmith shop, only about 25 feet distant.   The belter immediately came, and, seeing the deceased standing attempting to hold the belt on the pulley with a stick, told him it was no use; to "stand back."   Thereupon the deceased stepped back, and the belter kneeled down at the end of the drill, and, taking hold of the belt, attempted to put it on the driven pulley of the drill, the deceased apparently standing immediately behind him.   Just at this juncture of affairs, a stick or piece of board, from some unexplained source, "came flying," and "knocked the belt off, as it [the stick] came between the pulley and the belt, and the belt ran off, and was jerked out of the belter's hands, and caught one of the shares [on a pile near by] and turned it over," and then, in some way caught the deceased, and drew him up with great force, (the shaft revolved 170 to 180 times a minute,) and caused the injuries of which he died.   The cause of the belt winding up in this way was, as subsequent investigations proved, that it caught on the projecting nuts and bolts of the coupling on the shaft.

Passing over several other considerations that might be forcibly urged, there were at least two reasons why the plaintiff was not entitled to recover on the evidence.   The evidence shows (and on this point it was plenary) that the danger to be reasonably apprehended from placing a pulley and belt so near one of these couplings was that, if the belt came in contact with the bolt ends or nuts on the coupling, it was likely to get caught and wind up around the shaft.   Now, while it might be naturally anticipated that this might result in injury to the shaft and the belt by bending the one or breaking the other, we fail to find any evidence, unless as an inference from this accident, that it could or should have been reasonably anticipated that such a thing, if it happened, would have endangered the lives or limbs of the employes in the factory.   The only witness who gave testimony directly bearing on this point said:   "If there was no obstruction in the way, to my mind it [the belt when thus winding up] would move with comparative smoothness, but, should it be caught on anything, it might start first on one side, and then on the other,

and make a great commotion." In this instance it is evident that it was this "flying stick or board" from some unexplained source, coming between the belt and the pulley, which was the proximate cause of the belt's flying off, and, as a consequence, catching on the share, and then in its movements catching the deceased. This was an accidental occurrence for which no one, at least not the defendant, was liable, or which it was bound, in the exercise of ordinary prudence, to have anticipated. Of course, it requires no argument to prove that it makes no difference how negligent the defendant was in the care of its own property, provided such negligence constituted no breach of duty towards the deceased.

The second ground on which we think the plaintiff could not have recovered is that the evidence shows that the deceased's own negligence contributed to the injury. It was no part of his duty to meddle with the belt. The defendant had a man whose special duty it was to attend to such matters. In attempting to replace the belt, the deceased was not only a volunteer intermeddler, but in doing so he in fact did the very thing which caused his death; for it appears that when the belt came off the upper pulley it fell on the shaft on the side of the pulley furthest from the coupling, and but for his attempting to put it back it would have remained there, and never come in contact with the coupling. And, even after this, if he had properly heeded the warning of the belter, if not also of the driller, and stood back a proper distance, he would have been entirely out of the way of danger. He had ample opportunity to do so, and he had no duty to perform which required him to remain in such close proximity. There is no suggestion of any good reason for his remaining where he did. He was a man of mature years, and had been employed in this factory for some three years, and for three or four weeks after the drill had been moved to this particular place, and must necessarily have been quite familiar with the machinery and other instrumentalities there in use, notwithstanding the ingenious effort of counsel to prove the contrary.

On the trial the plaintiff offered to prove by certain expert witnesses that, in their opinion, the arrangement of the pulley and coupling so near each other was dangerous. This the court excluded.

In our opinion, this was not a case that required any special expert or mechanical knowledge to solve the question propounded. The facts when placed before the jury were of such a nature that juries and men of ordinary intelligence generally would be just as competent to form opinions from them and draw inferences from them as to whether the arrangement was reasonably safe or not as the witnesses, and therefore the opinions of experts on the subject were not admissible. These experts were permitted to testify fully as to the frequency of belts running off, the degree of probability of their catching on the protruding nuts and bolts of the coupling, its effect on the belts, how the danger of their catching might be avoided, etc. This was all proper, but, when all these facts were presented and explained to the jury, it was for them, and not the witnesses, to determine whether the arrangement was dangerous or not. There are no other assignments of error that require special notice.

Order affirmed.

(Opinion published 50 N. W. Rep. 1026.)