LOUIS NUTZMANN v. GERMANIA LIFE INSURANCE COMPANY OF
NEW YORK.

January 19, 1900.

Nos. 11,856—(170).

**Injury to Fellow Servant—Negligence of Master in Selection of Servants.**

If a master has failed to exercise ordinary or reasonable care in the
selection of his servants, in consequence of which he has in his employ a
servant who, by reason of habitual drunkenness, negligence, or other
vicious habits, or by reason of want of the requisite skill to discharge the
duties which he is employed to perform, or for any other cause, is unfit
for the service in which he is engaged; and if, in consequence of such un-
fitness, an injury happens to another servant, the master must answer
for the damages suffered by such servant, unless the person injured had
notice of the incompetency, or had equal opportunities with the employer
to obtain notice.

**Passenger Elevator.**

In an action brought by a servant against the owner of a building to
recover for injuries alleged to have been caused by the negligence and
unskilfulness of a fellow servant while operating an elevator, it is *held*
that on the evidence the question as to the exercise by the master of or-
dinary and reasonable care when selecting the servant whose negligence
caused the injuries was for the jury.

**Expert Testimony.**

The manner of operating an hydraulic pressure elevator, and the train-
ing, skill, and experience needed by the operator, is not a matter of such
common knowledge as to preclude the giving of expert testimony on the
subject.

Action in the district court for Ramsey county to recover $15,-
000 damages for personal injuries. The case was tried before
Kelly, J., who directed a verdict in favor of defendant; and from an
order denying a motion for a new trial, plaintiff appealed. Re-
versed.

*How & Butler* and *Carl Taylor*, for appellant.

The court erred in excluding expert testimony as to competency
of the operator. As to the general rule, see Sneda v. Libera, 65

Minn. 337. Though an elevator be a freight elevator, if the employer permits it to be used by employees for personal transportation, great care must be exercised in its operation. Wise v. Ackerman, 76 Md. 375. Elevators have frequently been held machines of such character as to render admissible expert testimony concerning the proper method of construction and operation. Union v. Blindauer, 175 Ill. 325; Kern v. DeCastro, 125 N. Y. 50; Bier v. Standard, 130 Pa. St. 446. Expert testimony has been received concerning the proper manner of constructing machinery and appliances of far simpler character. Neubauer v. Northern Pac. R. Co., 60 Minn. 130; Blomquist v. Chicago, M. & St. P. Ry. Co., 60 Minn. 426; Leslie v. Granite, 172 Mass. 468.

*C. D. & Thos. D. O'Brien,* for respondent.

COLLINS, J.

Defendant corporation was the owner of a nine-story office building in the city of St. Paul, in which plaintiff was employed as an assistant to the engineer, whose name was August Hanft. The latter's brother, Charles, was also employed in the building, as an elevator man. The plaintiff was injured by being thrown out of one of the elevators, known as "No. 3," while it was being operated by Charles Hanft, and thereupon brought this action to recover damages. In his complaint he alleged that his injuries were caused by the carelessness and negligence of Hanft in starting the elevator when plaintiff was attempting to take passage in the line of his duty or employment, and also alleged that at the time, and prior thereto, Hanft was inexperienced and without training or skill in the management of elevators, as defendant well knew, or should have known; and, further, that defendant had wrongfully, carelessly, and negligently employed him as an elevator operator, and had thereafter retained him in its employ as such.

No question was raised at the trial, and none has been on appeal, as to the sufficiency of the proofs to support the claim that Hanft's negligence caused the accident, and that plaintiff's injuries were the direct result. Nor is it disputed that they were fellow servants, and that the rule which relieves the master from the consequences of an injury suffered by his servant while in the discharge of his

duty, when such injury has been caused by the negligence of a fellow servant (except as that rule has been changed by a statute of no consequence here), will prevent plaintiff from recovering unless there was an omission on the defendant's part to use reasonable care in the selection of Hanft for the purpose of managing and operating an elevator. To establish this omission the plaintiff introduced testimony which it is claimed by his counsel tended to support the allegation in the complaint as to Hanft's inexperience and lack of skill when employed, and up to the time of the accident, and that it failed to exercise reasonable and ordinary diligence when hiring Hanft and when keeping him in its service as an elevator man.

When directing a verdict, the court below held that plaintiff's proofs were wholly insufficient to make a case for the jury on the proposition that Hanft was in fact unfit and incompetent to have control of an elevator when the accident happened, and that defendant knew, or in the exercise of ordinary care should have known, of his unfitness and incompetency. We are unable to agree with the learned court below on these points. On the contrary, we are of the opinion that a case was made for the jury on these particular claims. The rule of law which governs in such cases is correctly stated as follows:

If the master has failed to exercise ordinary or reasonable care in the selection of his servants, in consequence of which he has in his employ a servant who, by reason of habitual drunkenness, negligence, or other vicious habits, or by reason of want of the requisite skill to discharge the duties which he is employed to perform, or for any other cause, is unfit for the service in which he is engaged, and if, in consequence of such unfitness, an injury happens to another servant, the master must answer for the damages suffered by such servant, unless the person injured had notice of the incompetency, or had equal opportunities with the employer to obtain notice.

This rule has twice been recognized by this court without comment. Bunnell v. St. Paul, M. & M. Ry. Co., 29 Minn. 305, 13 N. W. 129; Smith v. E. W. Backus Lumber Co., 64 Minn. 447, 67 N. W. 358.

A brief statement of the facts as shown when the verdict was ordered must be given: The building was managed by defendant's agent, and he employed Hanft and put him at work on or about February 9. The accident happened on February 21,—some 12 days later. Hanft was then about 41 years of age, and when he applied for the place had never-handled an elevator of any description. While it was not shown by the evidence, it is fair to infer, from what was proven as to his previous occupation and employment, that he was wholly unacquainted with the operation of machinery of any description, or with any kind of mechanical contrivances. Hanft had applied to the agent for a position, and when a vacancy occurred in the elevator force the latter inquired of the engineer if his brother was able to fill the place, and was informed that he would be with a little instruction and practice. Hanft was employed a day or two afterwards, the engineer having reported to the agent that he could do the work required. He was instructed by the engineer, and had practiced on the elevator at least two evenings before he was employed, and before commencing to run the elevators himself. Up to the time of the accident he commenced work at 7 o'clock p. m., running the elevator as it was needed until 12:30. He was night watchman from that hour until morning. There was little use for an elevator in the evening, and, according to the evidence of one of plaintiff's witnesses, all of his experience on No. 2 did not exceed one hour of steady running each night,—perhaps 12 hours, continuous work altogether.

Three of the Hale hydraulic pressure elevators were used, running side by side in the same cage or shaft, and numbered 1, 2, and 3. Nos. 1 and 2 were built alike, and were exclusively used for passenger service, while No. 3 was constructed for heavier loads, and was used for both passengers and freight. Each was operated by means of a rope or cable running perpendicularly, and a shifting lever; the latter being set upright inside a guard frame. In Nos. 1 and 2 the doors, guards, and levers were on the west side of the car. The operator always faced the door. To ascend, the lever was thrown by the person in charge to his right,—towards the north. To descend, it was thrown to the left,—towards the south. After starting, the lever, of its own motion, came to the center.

To stop when in motion, the lever was thrown in a direction opposite to that used when starting, past the center, and then brought back to that point. A quicker stop could be made by grasping the rope or cable.

Now, on elevator No. 3 the door was on the west side, as in Nos. 1 and 2; but the guard and lever were on the north, so that the operator, instead of facing the door, stood with it at his left. There was some discrepancy in the testimony as to the manner in which the lever was thrown to set the car in No. 3 in motion, but the jury would have been justified in believing that to ascend it was moved to the left, while to descend it was pushed to the right; that is, the motion for starting was exactly the reverse of that required in Nos. 1 and 2. It was also shown that, as elevator No. 3 was counterweighted more heavily than Nos. 1 and 2, it ascended more rapidly with the same load. Because of these differences in the operation and manner of handling, it is obvious that a man with limited experience might be fairly well qualified to operate Nos. 1 and 2, and yet somewhat deficient when put in charge of elevator No. 3. In fact, Hanft admitted, when testifying, that he did not have as perfect control over No. 3 as he had over No. 2. Up to the night of the accident his work had been upon the latter, but that evening he used No. 3, because Nos. 1 and 2 were out of service. He had used No. 3 but a very few times when the accident occurred, and it is quite clear from what happened that he lacked experience and skill in its management.

It is the law of this state that a prima facie case of negligence is made out against the master if it be proved that at the time of his employment the servant whose negligence has caused another to be injured was unfit and incompetent to perform the service required of him, and the burden is then on the master to disprove his own negligence. Crandall v. McIlrath, 24 Minn. 127; Morrow v. St. Paul C. Ry. Co., 71 Minn. 326, 73 N. W. 973. And the question of negligence in the appointment or retention of a fellow servant alleged to be incompetent is ordinarily one of fact to be determined by the jury, if there is any evidence on the subject which may be properly committed to their consideration.

It may be that it did not conclusively appear from the evidence

that Hanft was wholly unfit and incompetent to operate these elevators when he was employed by the agent; for he had received some instruction, and was not without practice in the management of No. 2,—very little, to be sure, but unquestionably of some value. And he was considered competent by his brother, the engineer, upon whose opinion the agent seems to have relied entirely when he put Hanft at work. The agent made no inquiries or investigation as to what had been done towards qualifying the man for the position, although he had been informed that instruction was necessary in order to render him capable and competent. He was advised and knew that to some extent, at least, skill and experience were required on the part of one who was to be intrusted with the management of such a mechanical contrivance as an elevator used for the carrying of passengers, and always dangerous to life and limb unless properly handled. He simply obtained a verbal report of some character as to Hanft's fitness for the work, and exactly what that report was is not shown by the record. On the whole evidence as to the exercise of ordinary or reasonable care in the selection of this servant by defendant corporation, the case was for the jury.

We are also of the opinion that the court erred when it refused to receive expert or opinion evidence bearing upon the subject of the amount of training and experience required to enable a person, previously unskilled, properly to operate the elevators in defendant's building, and as to whether Hanft's training and experience had been sufficient. The rule as to the admission of expert or opinion evidence is that the opinions of witnesses possessing peculiar skill are admissible whenever the subject-matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance. On questions of science, skill, and trade, or others of the like kind, persons of skill may not only testify to facts, but are also permitted to give their opinions in evidence. The court below was of the opinion that the case was not one for expert testimony, because there was no question of skill involved in the operation of an elevator under hydraulic pressure, and put in motion by a shifting lever, and consequently expert testimony as to the training and

experience needed to qualify an ordinary person to handle one was inadmissible.

It is true that matters of common observation are not proper subjects for expert testimony. And it is also true that any person riding in one of defendant's elevators can see that it is put in upward motion by pushing the lever one way, while to go down the lever is moved in the other direction. And a person riding on an electric car can see that the forward motion of the car is obtained by turning the revolving crank on top of the rheostat in one direction, while to reverse the motion the crank is turned the other way. And all know that the opening of the throttle of a locomotive will cause it to advance, and that closing the same will sooner or later cause it to stop. These are all matters of common observation, but have nothing to do with the subject-matter of the questions put to the witness.

Here was a mechanical contrivance for the transportation up and down of human beings. The questions naturally arising out of its use were: How readily can the operator stop or start at a given point? How difficult is it to regulate the speed? What are the consequences of a failure to properly control the machine? And how much judgment, nerve, and manual dexterity or strength are required to meet all of the various emergencies which may arise? Inexperienced persons, although possessed of more than ordinary intelligence, are not likely to prove capable of forming a correct judgment upon any of these questions, and need the assistance of those who possess peculiar skill and qualifications for the task. And it seems that defendant's agent fully realized the fact when he called upon the engineer for his opinion as to the ability of Hanft to do the work, and again when he accepted another opinion to the effect that the latter had acquired the necessary knowledge. The manner of operating an hydraulic pressure elevator, and the training, skill, and experience needed by the operator, is not a matter of such common knowledge as to preclude the giving of expert testimony on the subject. See Olmscheid v. Nelson-Tenney Lumber Co., 66 Minn. 61, 68 N. W. 605. Counsel for defendant do not seem to object to the form of the questions put to the witness

who was produced as an expert, and we have not considered that matter.

Order reversed, and a new trial granted.