CHARLES A. ANDERSON v. MICHAEL F. FIELDING and Another.[1]

April 29, 1904.

Nos. 13,629, 13,841—(5, 114).

**Negligence of Master.**
    A negligent act will not be excused by the fact that it is customary. Proof of custom, however, is evidence, but not conclusive, as to whether the act is negligent. This rule applies to the act of the master in selecting and furnishing tools and appliances for the use of his servant.

**Defective Appliance.**
    A servant is not chargeable with the assumption of the risk, or with contributory negligence as a matter of law by continuing to use for a reasonable time a machine or appliance which he knows to be unsafe where he has complained of it, and the master has promised to remedy the defect, unless the appreciated danger of using it is so imminent that a man of ordinary prudence would refuse longer to use it unless it was made safe. What is a reasonable time in such a case is, as a general rule, a question of fact.

**Questions For Jury.**
    The questions whether the defendants were negligent in furnishing the plaintiff unsafe appliances for his use in doing the work assigned to him, and whether he was guilty of contributory negligence in using them, were made by the evidence herein questions of fact for the jury.

**Evidence.**
    Expert testimony was admissible in this case as to whether a block and hook, constituting a part of a painter's apparatus for supporting himself when working on high structures, was reasonably safe.

**Substitution of Plaintiff.**
    The proviso added to section 5913, G. S. 1894, by Laws 1897, p. 487, c. 261, construed, and *held*, that it only authorizes the personal representative of a deceased party to be substituted as plaintiff in the original action brought by him, and convert it by an amendment of the pleadings, if the facts warrant it, into an action for the benefit of the widow and next of kin.

    Action originally brought by John Anderson in the district court for Ramsey county, to recover from defendants $20,000 for personal in-

1 Reported in 99 N. W. 357.

juries. The case was tried before Orr, J., and a jury, which rendered a verdict in favor of plaintiff for $4,000. From an order denying a motion for judgment notwithstanding the verdict but granting a motion for a new trial, defendants appealed. Thereafter, and before defendants' appeal was heard, plaintiff died and Charles A. Anderson, as administrator of decedent's estate, being substituted as plaintiff, also appealed from the same order. Affirmed, on both appeals.

*S. C. Olmstead* and *C. H. Taylor,* for plaintiff.

*Clapp & Macartney* and *Franklin H. Griggs,* for defendants.

START, C. J.[2]

John Anderson, the original plaintiff in this action, hereinafter referred to as the plaintiff, was a sailor of some fourteen years' experience, and accustomed to painting masts, yards, smokestacks, and fighting tops on war-ships. He came to the city of St. Paul in 1902, and in May of that year was employed by the defendants in painting the high bridge of the city across the Mississippi river. His work required him to be suspended one hundred sixty feet above the water, and while he was so employed he fell, and sustained serious personal injuries. He brought this action to recover damages for such injuries, alleging that they were caused by the negligence of the defendants in furnishing unsafe tools and appliances to be used by him in doing the work assigned to him.

The specific charge of negligence alleged in the complaint and relied upon as the basis of his cause of action was that the block or pulley which was a part of the apparatus with which he was supported while at work was so constructed as to be supported by a single stationary hook, without swivel or double hook to prevent the block from unhooking and falling from the line over which it was intended to be placed. The complaint also alleged that the plaintiff objected to use such appliances, and so informed the defendants' foreman, and of their unfitness and insufficiency; that thereupon the defendants' superintendent promised to furnish for his use a safe tackle and block with double hooks, as he had suggested, and requested and directed him to use in the meantime the block with the single stationary hook; and, further,

2 DOUGLAS, J., ill, took no part.

that the plaintiff relied on such promise, and proceeded to use with due care the block and hook so furnished, and while so doing the block, with the hook, by reason of its defective and unfit condition, slipped off and unhooked from the support to which it was attached, causing him to fall to the water below, thereby breaking his thigh, both of his legs above the knee and one of them below the knee, and otherwise seriously and permanently injuring him.

The answer denied the alleged negligence and promise, and affirmatively alleged that all of the appliances furnished for the use of the plaintiff were safe and sufficient, and that his injury was caused by his own negligence.

A trial of these issues resulted in a verdict in favor of the plaintiff for the sum of $4,000. The defendants, upon a settled case, made a blended motion for judgment notwithstanding the verdict, or for a new trial. The trial court, on April 20, 1903, made its order denying the motion for judgment, but granted the motion for a new trial. The defendants appealed from the whole order April 27, 1903. The plaintiff died on September 25, 1903, and the administrator of his estate was on December 31, 1903, substituted as plaintiff in this action, and appealed from the order on January 14, 1904, written notice of the making of the order not having been served on the plaintiff. The defendants urge in support of their appeal that the trial court erred in denying their motion for judgment, and the administrator on his appeal urges that the court erred in granting a new trial.

The defendants' appeal will be first considered. It does not involve the question whether the evidence was such that the trial court ought, in the exercise of a fair discretion, to have granted a new trial. The question is whether the defendants were entitled to judgment as a matter of law. Two general propositions are urged by them why their request for a directed verdict in their favor should have been given. If either is correct, then the defendants are entitled to a judgment notwithstanding the verdict; otherwise not.

1. The first proposition is that the evidence conclusively shows that the defendants exercised ordinary care to procure and furnish for the plaintiff's use a block and hook which was reasonably safe for the purposes and the place in which he was required to use it. The measure of the defendants' duty in the premises was ordinary care; that is, the

care which every prudent man is expected to and would employ under like circumstances. The construction of the hook in the block and its liability to unhook constituted the defect of which the plaintiff complained, and its selection and use by the defendants instead of a double hook, which it was claimed was absolutely safe, constituted the defendants' alleged negligence. There was no question but that the block and hook furnished was in good repair, the objection being to its kind and construction. Such being the claim of the plaintiff, the defendants gave evidence which was undisputed showing that the hook in question was the only kind used for the same purpose the plaintiff was using it when injured, and that it was the usual and customary one used for like purposes.

Evidence of common and general use of a particular appliance is competent on the question of its reasonable safety, and also on the question whether an employer selecting and furnishing it to his employee exercised ordinary care. Counsel claims that such evidence, if uncontradicted, is conclusive in favor of the employer on the question of his alleged negligence. If this be so, then it follows that there was no negligence on the part of the defendants, and that the trial court erred in denying their motion for judgment. The contention of counsel has the support of many decisions in other jurisdictions, but it is not the rule adopted by this court. The law of this state is that a negligent act will not be excused by the fact that it is customary. Proof of custom, however, is evidence, but not conclusive, as to whether the act is negligent. This rule applies to the act of selecting and furnishing tools and appliances for the use of employees. Craver v. Christian, 36 Minn. 413, 31 N. W. 457; O'Malley v. St. Paul, M. & M. Ry. Co., 43 Minn. 289, 45 N. W. 440; Flanders v. Chicago, St. P., M. & O. Ry. Co., 51 Minn. 193, 53 N. W. 544; Lawson v. Truesdale, 60 Minn. 410, 62 N. W. 546; Hinton v. Eastern Ry. Co. of Minn., 72 Minn. 339, 75 N. W. 373; Attix v. Minn. Sandstone Co., 85 Minn. 142, 88 N. W. 436.

Again, it is claimed that it conclusively appears from all the evidence, including the plaintiff's own testimony, that his fall was not caused by the unhooking of the appliance in question. The block and hook was an exhibit on the trial, and used to illustrate the testimony of the plaintiff and other witnesses. It was also so used on the argument in this

court; and we are of the opinion, based upon an examination of the appliance and the whole evidence relevant to the question of the cause of the plaintiff's fall, that it was one of fact for the jury. We accordingly hold that the question whether the defendants were guilty of negligence in failing to furnish for plaintiff's use reasonably safe appliances, and whether such failure was the cause of his injury, was not a question of law, but one of fact for the jury.

2. The defendants' second proposition is to the effect that the plaintiff was conclusively guilty of contributory negligence in continuing to use the block and hook for so long a time as he did after he knew, as he claims, that it was defective in construction, and unsafe to use in the work assigned to him, and that the defendants had failed to remedy it. A servant is not chargeable with the assumption of the risk or with contributory negligence as a matter of law by continuing to use for a reasonable time a machine or appliance which he knows to be unsafe, and appreciates the risk of using it, where he has complained of it, and the master has promised to remedy the defect, unless the appreciated danger is so imminent that a man of ordinary prudence would refuse to longer use it unless it was made safe. A reasonable time, within the meaning of this rule, is any period which does not preclude all reasonable expectations that the promise may be kept. Greene v. Minneapolis & St. L. Ry. Co., 31 Minn. 248, 17 N. W. 378; Lyberg v. Northern Pacific R. Co., 39 Minn. 15, 38 N. W. 632; Schlitz v. Pabst Brewing Co., 57 Minn. 303, 59 N. W. 188; Rothenberger v. Northwestern C. M. Co., 57 Minn. 461, 59 N. W. 531; Harris v. Hewitt, 64 Minn. 54, 65 N. W. 1085; Vogt v. Honstain, 81 Minn. 174, 83 N. W. 533; Gray v. Red Lake Falls L. Co., 85 Minn. 24, 88 N. W. 24.

In this case the plaintiff continued to use the block and hook for some two weeks after the first promise to substitute one with a double hook. But his testimony tends to show that the defendants' promise was repeated several times, and that on the last time the plaintiff called attention to the delay in getting a new block with a double hook he was assured that it had been ordered, and was expected "any time now." This was about two days before he was injured. We are of the opinion that whether the plaintiff continued to use the defective block and hook longer than a reasonable time, and whether the danger of using it was so imminent that no man of ordinary prudence would continue

to use it in reliance on the defendants' promise to remedy the defect, was, upon the evidence, not a question of law, but one of fact, which was properly submitted to the jury. We therefore hold that the defendants' motion for judgment notwithstanding the verdict was properly denied.

3. This brings us to the plaintiff's appeal, which presents the question of the correctness of the order of the court granting a new trial of the action. If prejudicial errors of law occurred on the trial, the order, so far as it granted a new trial, was right. The plaintiff, over the objection of the defendants, was permitted to give his opinion as an expert that the block and hook in controversy was not a reasonably safe appliance for the work assigned to him, but that a block with a double hook was. The defendants called four witnesses shown to be competent to express an opinion on the question, and severally asked them whether, in their opinion, the block and hook in question was a reasonably safe appliance with which to do the work assigned to the plaintiff. The objection of the plaintiff to the questions being answered was sustained. The court also excluded the testimony of a competent witness called by the defendants to the effect that the double hook was more liable to unhook than the single hook in controversy. Now, as said by the learned trial judge, "There cannot be two rules, one for the plaintiff and one for the defendants, but one rule must apply." It is thus clear that there was prejudicial error in the rulings of the court, and that, in any event, a new trial was properly granted.

With a view to such trial, it is necessary to determine whether the court erred in receiving the plaintiff's expert evidence or in excluding that of the defendants. Whenever in the trial of a cause the subject of inquiry is a matter which lies so far outside the range of common knowledge and experience that the jury are presumably unable to pass upon it intelligently without the assistance of the opinion of persons possessing peculiar skill and knowledge in the premises expert or opinion evidence is admissible. But such evidence is not admissible where the facts are such that, when placed before the jury and explained to them, they are as competent as the experts to form an opinion.

There is no controversy as to this rule, but the difficulty lies in its application, which is illustrated by the following cases: In Krippner v. Biebl, 28 Minn. 139, 9 N. W. 671, opinion evidence was held to be

admissible to show how far fire will jump a fire break. In Davidson
v. St. Paul, M. & M. Ry. Co., 34 Minn. 51, 24 N. W. 324, expert evi-
dence was held proper to show how long sparks from a locomotive will
keep alive and communicate fire. Whether the arrangement of a
pulley and coupling near each other was dangerous was held not to be
a question for experts in the case of Freeberg v. St. Paul Plow Works,
48 Minn. 99, 50 N. W. 1026. The proper construction of ice tongs
was held not to be a matter of such common knowledge as to preclude
expert testimony as to the same. Neubauer v. Northern Pacific R. Co.,
60 Minn. 130, 61 N. W. 912. Again, in Olmscheid v. Nelson-Tenney
Lumber Co., 66 Minn. 61, 68 N. W. 605, it was held that expert testi-
mony was competent on the question of the safety of a belting saw
operated without a carriage attachment. Such evidence was admissible
on the question whether it was practicable to put a guard around a
machine. Peterson v. Johnson-Wentworth Co., 70 Minn. 538, 73 N.
W. 510. Whether the method adopted by an engineer in "bucking
snow" was proper was held in Sieber v. Great Northern Ry. Co., 76
Minn. 269, 79 N. W. 95, to be a question as to which opinion evidence
was admissible. The proper manner of operating a hydraulic pressure
lift or elevator, and the skill required to operate it, are questions as to
which expert evidence is competent. Nutzmann v. Germania Life Ins.
Co., 78 Minn. 504, 81 N. W. 518. In the case of Thiel v. Kennedy,
82 Minn. 142, 84 N. W. 657, it was held that the proper construction
of a belt shifter was a matter as to which opinion evidence was proper.

Now, the block and hook here in question is, taken by itself, as sim-
ple in its construction as a pair of ice tongs, and, if the question was
merely whether it could be unhooked, expert evidence would be inad-
missible, for anybody would see at a glance that it could be. But the
question for the jury was whether it was a reasonably safe appliance
for the doing of the particular work assigned to the plaintiff, and
whether the single hook in actual use was as safe as the double hook.
Whether or not the single hook in such actual use was likely to unhook,
the effect upon it of the weight of the operator, or of his swinging him-
self around so as to paint all parts of the bridge within his reach, at the
same time supporting himself wholly or in part by his legs and hand,
were not matters of such common knowledge and experience as to ex-
clude opinion evidence. They were no less questions of special expe-

rience and knowledge than were those in the cases we have cited. We hold that it was error for the trial court to exclude the opinion evidence offered by the defendants, and that the order granting a new trial was correct.

4. One other matter remains to be considered. A motion on behalf of the administrator of the estate of plaintiff was made to substitute him in place of the deceased plaintiff. This was opposed by the defendants, but the motion was pro forma granted, with leave to the defendants to argue the motion on the merits on the hearing of the appeal. Their proposition is briefly stated, that the administrator based his right to be substituted upon the claim that the cause of action set forth in the complaint herein by virtue of Laws 1897, p. 487, c. 261, survived to the personal representative of the plaintiff, and that this contention cannot be sustained, because the cause of action died with the plaintiff; hence the action abated.

The administrator was properly substituted for two reasons. It was the defendants' duty, as appellants, as a condition precedent to the hearing of their appeal, to have the administrator substituted as respondent. G. S. 1894, § 6153. Again, the administrator had the right to be substituted so as to prosecute this appeal to set aside the order granting a new trial and to restore the verdict in favor of the plaintiff, for, if restored, the verdict would be an asset of the estate. Cooper v. St. Paul City Ry. Co., 55 Minn. 134, 56 N. W. 588.

But, having reached the conclusion that the order appealed from must be affirmed on both appeals the case will, when remanded to the district court, stand just as if the plaintiff had commenced the action, and died before trial, for the verdict has been set aside, a new trial granted, and the case now stands as if there had never been any trial. St. Anthony Falls Bank v. Graham, 67 Minn. 318, 320, 69 N. W. 1077. Such being the status of the case, does the action abate? The answer to this question involves a construction of Laws 1897, p. 487, c. 261. Section 5912 declares that every cause of action arising out of an injury to the person dies with the person, except as provided in the next section (5913). This section provides that, when death is caused by the wrongful act or omission of a party, the personal representatives of the deceased may maintain an action for the injury, if he could have done so if he had lived, and if the action be commenced within two

92 M.—4

years after such act or omission. The damages, however, cannot exceed $5,000, and must be for the exclusive benefit of the widow and the next of kin, except that any demand for the support of the deceased and funeral·expenses duly allowed by the probate court shall be first deducted and paid:

> Provided, that if an action had been commenced by such deceased person during his lifetime for such injury which had not been finally determined, such action does not abate by the death of the plaintiff, but may be continued by the personal representatives of the deceased, for the benefit of the same persons and limited to the same amount of recovery as herein provided, and the court on motion may allow the action to be continued by such personal representatives and order pleadings to be filed and issues made conformably to the practice in cases brought under the provisions of this chapter.

This last proviso is chapter 261, p. 487, Laws 1897. Does it mean, as counsel for the administrator seems to claim, that the personal representatives of the deceased may be substituted in the action commenced by his intestate, and prosecute his cause of action for damages for the benefit of the widow and next of kin, which would otherwise die with him. If so, the legislature has repealed section 5912, providing that an action arising out of an injury to the person dies with the person in cases where the deceased commenced the action, and provided for the survival of two actions for the same injury resulting in death. It is improbable that the legislature intended any such result by the proviso. Nor is a construction which would authorize the substitution of the personal representative to prosecute the actions accruing to the deceased by reason of his injury consistent with either the language or obvious purpose of the proviso. Why amend the pleadings if the personal representative succeeds to the cause of action of the deceased alleged in his complaint? Or why, if such be the case, limit the amount of the recovery to $5,000? The cause of action accruing to the deceased in his lifetime was not so limited. The cause of action given by section 5913 is an original statutory action for the benefit of the widow and next of kin of the deceased to recover their pecuniary loss on account of his death. Schwarz v. Judd, 28 Minn. 371, 10 N. W. 208.

Now, if the action which the personal representative is authorized by the proviso to prosecute is the common-law action which the deceased had a right to maintain, and which would die with him except for the proviso, why was not the proviso added to section 5912 providing that a cause of action arising out of an injury to a person dies with him? Again, in cases where the deceased commences an action for recovery of damages sustained by him, and he dies two or more years after his injury resulting in his death, but before the final determination of the action, the cause of action by the personal representatives for the benefit of the widow and next of kin would be barred except for this proviso, which was intended to afford a remedy in such cases, and also to avoid the delay and expense of commencing another action.

We accordingly hold that the only permissible construction of the proviso is that it authorizes the personal representative of the deceased, when the facts warrant it, to be substituted as plaintiff in the original action brought by the deceased, and convert it by an amendment of the pleadings into an action under section 5913, as it stood before the proviso was added, for the benefit of the widow and next of kin. It does not authorize such substitution for the purpose of prosecuting the original cause of action which accrued to the deceased in his lifetime. See Webber v. St. Paul City Ry. Co., 97 Fed. 140, 38 C. C. A. 79. Whether the facts in this case warrant such action by the administrator we cannot determine on this appeal, for we cannot presume that the plaintiff's death was not caused by the act or omission of the defendants, or that he left no widow or next of kin. These are questions to be determined by the trial court if the administrator be permitted to amend his complaint as we have suggested.

It is therefore ordered that the order of the trial court be affirmed on both appeals, and the case remanded to the district court for further proceedings in accordance with this opinion.