JENNIE BEARDSLEY vs. MINNEAPOLIS STREET RAILWAY CO.

Argued June 23, 1893.    Affirmed Sept. 7, 1893.

**Verdict Supported by the Evidence.**
Evidence *held* sufficient to justify the verdict.

**Numerous Rulings on the Trial Reviewed.**
Numerous unimportant points made in respect to the rulings of the court in the admission and rejection of evidence, and in its charge to the jury, considered and disposed of.

Appeal by defendant, the Minneapolis Street Railway Company, from an order of the District Court of Hennepin County, *Seagrave Smith*, J., made February 15, 1893, denying its motion for a new trial.

The plaintiff, Jennie Beardsley, brought this action as the administratrix of the estate of her deceased husband, Charles O. Beardsley, to recover damages for the benefit of his next of kin, (1878 G. S. ch. 77, § 2,) claiming that his death was occasioned by the negligence of the defendant. He was employed by the company upon its electric street cars as motorman or driver. It was his duty to stand on the front platform and apply the current or the brake as occasion required. On October 30, 1891, he was driving car No. 377 on Lyndale Line, when it bucked; that is, stopped suddenly a moment and then started up again. It stopped so suddenly that Beardsley was thrown forward over the front dashboard, onto the track, and the car, quickly starting again, ran over him, causing his death. This car had bucked several times in June before, and the fact had been reported to the defendant's officers. New field-coils were then put into the front motor, and the car returned to service. Witnesses called by plaintiff and familiar with electric motors and their use, on hearing the evidence, attributed this bucking to defective or worn-out field-coils in the rear motor, which might and should have been replaced with new ones. It was carefully examined October 1st and a new armature put in. It then ran rightly for two weeks and then bucked, but on examination no fault was apparent, and it was continued in service; but Beardsley reported, the day previous to the accident, the motor flashing on both sides. New brushes and brush-holders

were put in that night, and the car put in service again the next morning. It worked properly all the morning; but at half past one o'clock in the afternoon, it bucked, and Beardsley was killed. It was a bright, clear day, with no rain or moisture to affect the insulation. The dashboard was two feet ten and a half inches high, above the platform on which Beardsley stood. He was six feet in height, thirty-three years old, strong, active and healthy. He had been driving for a year and a half, and understood his business. The theory of the plaintiff was, that the field-coils were defective in both the front and rear motors of this car; that those in the front motor were changed in June, but those in the rear motor were negligently allowed to remain in use, after notice of flashing and bucking, sufficient to put defendant upon inquiry and make it responsible for the accident. The jury returned a verdict for plaintiff for $5,000. The defendant moved for a new trial. Being denied, it appeals. Most of the fifty-four assignments of error relate to the admission or rejection of evidence. A statement of the questions, offers and objections, and the rulings of the trial court. and the arguments here upon each, would be voluminous.

*Koon, Whelan & Bennett*, for appellant.

*A. D. Smith*, for respondent.

COLLINS, J.    This was an action to recover damages for the death of plaintiff's intestate, alleged to have been caused by de-fendant's negligence. At the time of his death, the deceased was employed by defendant as a motoneer on one of its electric cars, and the accident was occasioned by the "bucking" of the car, (suddenly coming to a halt, and as suddenly starting up,) which threw the deceased over the dashboard to the ground in front, and the car quickly ran over and killed him.

The negligence charged is that the bucking of the car was caused by its defective condition, of which the defendant had previous notice, and yet failed to exercise reasonable care to remedy the defect, but negligently continued to use the car, notwithstanding its known defective and dangerous condition. On the merits of the case, we are satisfied that the evidence abundantly justified the jury in finding that the defendant corporation was guilty of negligence in causing this car to be used. It had frequently bucked

before, a fact well known to those to whom defendant had in-trusted its primary duty of seeing to the condition of its cars. There was also ample evidence to warrant the jury in finding that this bucking was caused by the old and worn-out condition of one of the electrical fields, and that, through either the negligence or ignorance of those whom defendant had placed in charge of this department of its business, or through its own neglect to furnish them with proper instrumentalities for that purpose, no proper tests had been applied to ascertain the condition of these fields, and no proper care had been exercised in renewing or replacing such as had been worn out. The defendant was also bound to know that, with a low dasher in front, the almost inevitable result of bucking would be to suddenly hurl the motoneer upon the ground in front of the car, and thus to greatly imperil his life.

We do not deem it necessary to discuss or even to refer to all of defendant's numerous assignments of error, numbering fifty-four, but shall simply speak specifically of those which are considered most important. The remainder may be dismissed with the statement that we do not regard them as well taken.

The testimony of the witness Batsford as to what the defendant's foreman said when he reported the car as bucking was admissible for the purpose of showing notice to the foreman of the defective condition of the car, and that the last-named person clearly understood the notice which Batsford had given him.

The witnesses whose evidence is referred to in the ninth to twelfth assignments of error, inclusive, were not, strictly speaking, examined as experts, but simply as men who had practical experience in operating electric cars, and they were asked, from their actual experience, the effect of weak fields in burning out armatures. This evidence was admissible, and was quite as reliable and persuasive as that of mere theorists, called "experts."

In view of the great latitude given a trial judge in the admission of expert testimony, and to the almost conclusive effect ordinarily given to his decision upon the preliminary question of qualification of witnesses, we think that assignments of error mentioned, from fourteen to eighteen, inclusive, are without merit.

The twenty-second and twenty-third specifications of error relate to the action of the court in permitting an expert witness, Shep-

ardson, to give his opinion as to what caused the car to buck, basing that opinion upon the assumption that all facts testified to by other witnesses were true. This was permissible, we think, under the rule laid down in *McNaghten's Case*, 10 Clark & F. 200, adopted and followed by this court in *Getchell* v. *Hill*, 21 Minn. 464, and *State* v. *Lautenschlager*, 22 Minn. 514. It is, in effect, putting a hypothetical case to a witness, which, as a matter of convenience, in the discretion of the court, may be put in that form. In fact, it is usually much more satisfactory in this shape than to attempt to repeat the facts testified to, and thus to embody them in a question. It is specifically urged that this witness had not heard all of the testimony, and also that the testimony upon which he was asked to base his opinion was partly fact and in part opinion. The first objection is obviated by the fact that, when it was proposed to read to this expert the testimony of a single witness whom he had not heard, defendant's counsel expressly waived such reading, and consented that the substance of the testimony might be repeated, which was done. It will be observed as to the second objection that the witness was asked to base his opinion solely on the facts testified to, and not upon opinion evidence; nor has our attention been called specially to anything wherein the testimony as to the facts was conflicting or lacking in clearness, so as to render the action of the court, when permitting a hypothetical case to be put in this way, an abuse of its discretion.

An answer to the question to the witness Stearns, namely, "State whether or not, in your opinion, the inspection which the company gave to the car at the time before the accident was the proper and usual inspection," was properly excluded, because it did not appear on what basis of facts the witness was called on to express an opinion, and, again, because the question involved the ultimate fact which the jury were to decide.

As to the subject to which defendant's eighth request related, the court had correctly and sufficiently instructed in its general charge.

The most important and plausible objection made by counsel to the action of the court in its presentation of the case to the jury is with respect to its refusal to charge that there was no evidence in the case that defendant was negligent in failing to

furnish deceased with a dashboard of sufficient height, and that, in determining the question of defendant's negligence, all evidence regarding the height of the dashboard should be disregarded. It is contended that this instruction should have been given—*First*, because the dasher was of the usual height, and as high as on any cars in use; and, *second*, because the deceased was aware and advised of its height, and hence had assumed the risk. The vice in the instruction asked for was that it left out of account the defective condition of the car which caused it to buck, or, if not, assumed that the deceased knew of that condition, and of the risks incident thereto. The dasher might have been of sufficient height had the car not bucked, and the deceased might have assumed any risk incident thereto, with the car otherwise in order, and yet not have assumed a risk incident to that in conjunction with a defect which alone rendered the height of the dashboard unsafe and exceedingly dangerous. It was not claimed that the height of the dashboard of itself caused the accident, but that it was caused by its insufficiency, coupled with the bucking of the car. What has been here said disposes of several other specifications of error.

Taking the charge as an entirety, the jury could not have misunderstood or have been misled by that portion complained of in the forty-fifth assignment of error. What the court meant, evidently, and what the jury must have understood by it, was not that it was the absolute duty of the defendant company to provide safe and suitable appliances and machinery, but merely that it was required to exercise reasonable care or diligence to do so, and that for negligence in this respect it would be liable in damages.

Order affirmed.

(Opinion published 56 N. W. Rep. 176.)