# WILLIAM F. OWENS v. CHICAGO GREAT WESTERN RAILROAD COMPANY[1]

December 16, 1910.

Nos. 16,943—(178).

**Act of congress constitutional.**
The act of congress, imposing upon interstate carriers liability to employees engaged in interstate commerce for injuries received through the negligence of coemployees, is valid.

**Enforcement of right in state court.**
A right arising under the federal constitution or laws may be enforced by the state courts.

**Expert opinion on mechanical appliance.**
A mechanical expert may give his opinion as to the cause of the particular operation of mechanical appliances, based upon a history of the circumstances and conditions surrounding the operation.

**Verdict sustained by evidence.**
Evidence considered, and *held* to sustain findings.

[1]Reported in 128 N. W. 1011.

---

[Note] Validity of statute abrogating fellow servant rule, see note in 12 L.R.A.(N.S.) 1040.

113 M.—4.

**Charge to jury.**

> The issue being whether the progress of a train was suddenly arrested by the act of the engineer, or the maloperation of the brake apparatus, it was not error to instruct the jury, if the sudden stoppage was unnecessarily made by the engineer, the plaintiff could recover.

Action in the district court for Ramsey county against the receivers of the Chicago Great Western Railway Company to recover $25,000 for personal injuries received in the state of Illinois by reason of the sudden stoppage of defendant's train, caused by the negligent acts of defendant's engineer. The answer alleged plaintiff's contributory negligence. At the trial defendant company was substituted for the receivers. The case was tried before Kelly, J., who, at the close of the trial denied defendant's motion to dismiss the action, because an attempt to enforce a federal statute in a state court. Its motion for a directed verdict, because of assumption of risk or contributory negligence, was denied. The jury returned a verdict in favor of plaintiff for $9,750. From an order denying defendant's motion for a new trial, it appealed. Affirmed.

*Briggs, Thygeson, Loomis & Everall,* for appellant.

*Samuel A. Anderson* and *A. F. Storey,* for respondent.

O'BRIEN, J.

Plaintiff was a conductor upon a freight train of defendant, which was engaged in interstate commerce. The train was partially made up in Chicago, and proceeded to Bellwood, where additional cars were added, and then went to South Elmhurst, all in the state of Illinois. For some distance after leaving Bellwood the train encountered an upgrade, the highest point of which was between that place and South Elmhurst. At the time of the accident complained of at least the forward part of the train had passed this highest point and was upon a slight downgrade. The train was to stop at South Elmhurst, but some one thousand feet sooner than intended, and while moving at from ten to twelve miles an hour, came to a sudden and violent stop, caused by the premature application of the full force of the air brakes. At the time this occurred the plaintiff was ascending a ladder upon the front end of the outside

of the caboose, the jar broke his hold, and he was thrown under the wheels and severely and permanently injured.

It seems that such a stop could be produced by the engineer improperly applying what is known as the "emergency," which means the full force of the braking apparatus, and also that it may be produced by any one of several defects in the apparatus itself. Defendant contended that this stop was caused by a foul or sticky condition of some valve situated in the interior of the mechanism, and which could not be discovered by any ordinary inspection. All other causes, such as the breaking of the hose, were eliminated.

1. The pivotal question in the case was whether plaintiff established his claim that the sudden stop resulted solely from the improper manipulation of the brakes by the engineer.

It was conclusively shown that undesired quick action of the brakes was sometimes produced in the manner and from the causes claimed by defendant; but there was also testimony which tended to show that the manner of the stop occurring to this train differed from those caused by an imperfect or foul valve, and that the stop shown in this case could only have been produced by the engineer. The testimony fairly showed that, when a valve in the apparatus upon a car was in the condition described it often failed to respond to the first application. This is generally light, and for the purpose of gathering up the slack, bringing the brake shoes against the wheels, and to bring the train generally under control. The failure of the apparatus upon one car to respond does not, it appears, prevent the train being thus brought under control; but when the second application or reduction is made the unresponding valve is by the additional force compelled to act, and in doing so goes beyond the desired point, and opens additional ports, causing an emergency application of the brakes, and bringing the train to a sudden stop. It will be seen from this that the exact position of the train with reference to the top of the grade or "hill," the condition of the slack, the position of the brake shoes, and whether or not there had been a first or light reduction or application made, were all-important factors in determining whether the engineer was or was not at fault.

Without attempting to recite the evidence as to these conditions, it

is sufficient to say it was conflicting, and, taken in connection with the evidence as to the tests and inspections made before and after the accident, made a case for the jury upon the question of the engineer's negligence, and that defendant's rights were fully protected by the following instruction: "The burden is upon the plaintiff to prove that this accident was caused by the improper act of the engineer in stopping the train, as it was claimed, in a sudden and unusual and violent manner. The defendant is not bound to prove the negative, but the plaintiff is bound to satisfy you that the train was stopped in that way by this engineer."

Counsel for defendant argue that, more than one cause having been shown which might have brought the train to a sudden stop, the jury were not at liberty to speculate which of these was the active agent in the maloperation of the brakes. This would be true, if there were no circumstances which pointed to one or the other of these as the probable cause. The jury were not compelled to accept as true the testimony of any witness, if conditions and circumstances proven to their satisfaction tended to contradict the direct testimony of such witness. This, taken in connection with the right of the jurors to determine the credibility of each witness, and their opportunity and that of the trial judge to observe the demeanor and manner of the witnesses, renders it impossible for this court to say the jury were not justified in finding the sudden stoppage was the result of the engineer's act in applying the brakes with improper force. Olson v. Great Northern Ry. Co., 68 Minn. 155, 71 N. W. 5.

2. There is no "fellow servant" statute in Illinois, where the accident happened; and plaintiff relies upon the federal act of April 22, 1908 (35 St. 65, c. 149 [U. S. Comp. St. Supp. 1909, p. 1171]), imposing liability upon interstate carriers for injuries sustained by their employees through the negligence of coemployees while engaged in interstate commerce. Defendant attacks this act as being beyond the power of congress, in that it is not a regulation of commerce. We think this act of congress must be held valid, under the reasoning of the federal supreme court in Howard v. Illinois Central R. Co., 207 U. S. 463, 28 Sup. Ct. 141, 52 L. ed. 297, and Watson v. St. Louis I. M. & S. Ry. Co. (C. C.) 169 Fed. 942.

3. But, it is claimed, even if a valid exercise of federal authority, the state courts are without power or jurisdiction to enforce this act of congress. It is well settled that, when the parties are properly before it, a state court will enforce any right which one has by virtue of the federal constitution or laws. Endres v. First Nat. Bank of Breckenridge, 66 Minn. 257, 68 N. W. 1092; Robb v. Connolly, 111 U. S. 624, 4 Sup. Ct. 544, 28 L. ed. 542; Claflin v. Houseman, 93 U. S. 130, 23 L. ed. 833. The amendment of April 5, 1910 (36 St. 291, c. 143), giving the state courts concurrent jurisdiction, and forbidding the removal of cases arising under the law, adds nothing to the jurisdiction of the state courts; its effect being only as to the right of removing to the federal courts actions brought in the state courts.

4. Certain witnesses for plaintiff were permitted in spite of objection to give their opinion, based upon the assumption of the truth of plaintiff's testimony, that the sudden stop was caused by the engineer's making an excessive reduction, or, as we would express it, an unnecessarily severe application, of the brakes. There is no doubt of the rule that ordinarily a witness may not be permitted to express an opinion as to the ultimate fact to be passed upon by the jury. Briggs v. Minneapolis Street Ry. Co., 52 Minn. 36, 53 N. W. 1019. An exception to this rule is found in such cases as those where a physician is permitted to give his opinion as to the cause of death, or analogous questions. If, as claimed by defendant, the evidence failed to indicate whether the unexpected stop was caused by the engineer or the defective valve, it would be clearly improper to permit a witness to give his opinion upon the subject. But, as already pointed out, the evidence tended to show that the sticky valve would only be responsible for the application of the emergency when a light reduction had been first made. The plaintiff's testimony was to the effect that no such first or light reduction had been made. The opinion of the witnesses was as to how the stoppage could have been caused if the plaintiff's testimony was true. This amounted to no more than the expression of their opinion upon a question of mechanics; i. e., what under given circumstances would produce a certain result. We are not prepared to say that the witnesses were

not properly qualified experts, and therefore think there was no error in receiving their testimony. Beardsley v. Minneapolis Street Ry. Co., 54 Minn. 504, 56 N. W. 176; Scarlotta v. Ash, 95 Minn. 240, 103 N. W. 1025; Getchell v. Hill, 21 Minn. 464; Anderson v. Fielding, 92 Minn. 42, 99 N. W. 357, 104 Am. St. 665; Donnelly v. St. Paul City Ry. Co., 70 Minn. 278, 73 N. W. 157.

5. We find no error in the instructions to the jury. The evidence did not show the plaintiff to have been guilty of contributory negligence as a matter of law. He cannot be said to have assumed the risk of the engineer's negligence. The court instructed the jury: "Finally, if you find from the evidence that the plaintiff was, just before the accident, in the line of his duty on the ladder next the caboose attached to this train, and if you further find that the engineer in charge of the train unnecessarily applied to the train a stop called a dynamiter, unnecessarily and unusually sudden and severe, by which the plaintiff was violently thrown from his position to the ground and under the wheels of the car, and thereby caused the injury he complains of, and if you further find that the plaintiff was not himself negligent in the premises in the position which he assumed, or in anything he did or omitted to do with reference to his position there, then the plaintiff should recover, and your verdict should be for the plaintiff." We see no error in this. If the engineer unnecessarily brought the train to a sudden and severe stop, it was a negligent act upon his part, which entitled the plaintiff to recovery, if as a result he was injured.

Order affirmed.