# DOMINIC SPINO v. BUTLER BROTHERS.[1]

January 27, 1911.

Nos. 16,912—(228).

**Injury in exploding dynamite — safety of method — questions for jury.**
   Action to recover for personal injuries sustained by the plaintiff while in the service of the defendant by its alleged negligence, in that its method of exploding dynamite was unsafe, and that it failed to instruct and warn him as to the hazards of the work. Verdict for him. *Held,* that the question whether the method adopted was a safe one was a subject for expert evidence; that the defendant's negligence, the contributory negligence of the plaintiff, and whether he assumed the risks, were each made by the evidence a question for the jury; that the verdict is sustained by the evidence; and that there were no reversible errors in the rulings of the trial court as to the admission of evidence or in its charge to the jury.

Action in the district court for St. Louis county to recover $15,500 for personal injuries. The facts are stated in the opinion. The case was tried before Hughes, J., and a jury which returned a verdict in favor of plaintiff for $5,000. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

   *Trafford N. Jayne,* for appellant.
   *Alexander Marshall* and *Theodore Hollister,* for respondent.

START, C. J.

On May 21, 1909, the plaintiff commenced to work for the defendant, a corporation which was then engaged in stripping an iron mine known as the La Rue. He worked with the track gang until June 1, 1909, and on that day he was put to work in the pit "gopher holing," so called, which was accomplished by drilling a hole horizontally into the bank, charging it with dynamite or powder, attaching a fuse, and exploding the charge. On the morning

[1]Reported in 129 N. W. 590.

[Note] Duty to warn or instruct servant, see note in 44 L.R.A. 33.

of June 25, next thereafter, while he was attempting to explode a charge, sand and other substances were thrown into his face and eyes by an explosion, which totally destroyed the sight of one of his eyes and partially that of the other, and otherwise seriously injured him.

He brought this action in the district court of the county of St. Louis to recover damages on account of the injuries so sustained on the ground of the defendant's alleged negligence, in that the system employed by it in exploding the dynamite was unsafe and that it negligently failed to instruct the plaintiff and warn him of the hazards of doing the work in the manner and with the instrumentalities furnished. The answer admitted that the plaintiff was injured while doing such work, but denied the allegations of the complaint as to its negligence, and alleged that the plaintiff was fully informed and appreciated the risks of his employment, and that his injuries were solely caused by his own negligence. The defendant at the close of the evidence moved the court for an instructed verdict in its favor, which was denied. A verdict was returned for the plaintiff in the sum of $5,000, and the defendant appealed from an order denying its blended motion for judgment notwithstanding the verdict or a new trial.

1. The primary question to be considered is whether the court erred in denying the defendant's motion for an instructed verdict; for, if so, the motion for judgment ought to have been granted. It is the claim of the defendant that the court did so err, for the reason that there was no evidence to sustain a finding that the defendant was negligent, and, further, that it conclusively appears from the evidence as a matter of law that the plaintiff was guilty of contributory negligence and assumed the risks.

There was evidence, taking the most favorable view of it for the plaintiff, tending to show these facts: The plaintiff is an Italian laborer twenty-four years old. He had worked in iron mines on the Range eight or nine months before he entered the service of the defendant, but prior to that time he had never drilled and exploded any gopher holes, and had never before seen the method used which the defendant employed. When he was set to work in the pit at

"gopher holing," he was told by the boss how to do the work, and he did it the same way which he had been told, and was so doing it at the time he was injured. As to the length of the fuse to be used, he was told to do as the others did, and not to use a long fuse, because it took too long to explode the blast. He followed the instructions, and used the same length of fuse, about eighteen inches long, which was white and the size of a pencil, as he saw other men using for the same purpose. The fuse would burn a foot in a minute. He knew that when the blast exploded it was liable to throw out sand and gravel, and appreciated that it was dangerous to stand in front of the hole when a blast exploded. At the time he was injured he and his partner—that is, his fellow workman—had the gopher hole dug about twelve feet into the bank. It was about a foot in diameter. The hole was just big enough to work with a shovel. When he was injured he was trying to find the fuse to light it, and was looking into the hole for that purpose. There were two and one-half sticks of dynamite in the little hole at the back or farther end of the gopher hole, and attached to the dynamite was a piece of fuse about a foot or one and one-half feet long, one-half of which stuck out into the big hole from the little one. He was trying to light this fuse with a candle tied on a stick about fourteen or fifteen feet long, which were furnished by the pit boss who was over the work that they were doing at the time. He put the stick with the candle at its end into the hole to light the fuse. While he was trying to light the fuse, the blast went off before he knew it. He was never told that there was any danger in firing the blast with the pole and candle; nor did he know that there was any danger in doing the work as he was told to do it. When he got the lighted candle into the gopher hole, he could not see—it was too dark—and he could not tell whether he was holding the candle blaze at the end of the fuse, or whether it was further back. Nor did he know, until the blast exploded, which was about a minute and one-half after he put the candle in, that the candle had lighted the fuse, because he could not see, and before he knew that the fuse was lighted the blast went off and injured him. At the time he was injured he was looking into the hole trying to locate and light the

fuse. The blast which injured plaintiff was the first one exploded that morning, the hole having been drilled and charged the evening before. The hole was dark and smoky. The smoke was blown into the hole by the wind, from a steam shovel working about thirty feet away. At times before the accident the plaintiff and his partner would wait awhile, when smoke got into the hole, for it to get out before lighting the fuse. The reason they did not do so on the morning in question was that the boss did not want them to wait very long, and on the evening before the boss became of-- fended because they waited so long in firing holes, and told them to "fire when it is time to fire; don't stand still." The defendant had provided a battery with necessary appliances by which the blast could be exploded, and the plaintiff knew how to use it; but he had been instructed to use it only when the hole was fifteen or more feet in length.

The evidence was conflicting in many material respects, and our statement of the evidentiary facts which the evidence tended to prove is based largely upon the plaintiff's testimony, for its credibility was a question for the jury. The question of the defendant's negligence was made by the evidence one for the jury, and the verdict in this respect is amply sustained by the evidence. The questions of the contributory negligence of the plaintiff and of his assumption of the risks are, by the evidence, in this particular case closely united, although they are in principle distinct.

The most serious question presented by the record is whether the question of the assumption of risks was one for the jury or for the judge. The burden was on the defendant to establish this defense. The question is always one of fact for the determination of the jury, unless the evidence is conclusive that the employee assumed the risks; that is, whether the undisputed evidence is so clear and convincing that fair-minded men can reasonably draw but one conclusion. In such exceptional cases it is the right and duty of the court to determine the conclusion and instruct the jury accordingly. The question cannot be determined from the point of view of the court room and by a strict adherence to the principle that every man must look out for himself, but from the point of view of those

who are compelled by necessity to engage in dangerous occupations and do as they are told.

The plaintiff in this case must be held to have known and appreciated the fact that if his lighted candle came in contact with the fuse it would explode the blast, and that if the fuse was lighted without his discovering it he likely would be seriously injured. This, however, is not the test; for the question is: Did he know and appreciate the danger of the fuse being ignited without his discovering it before the blast would explode? Does the undisputed evidence so clearly and conclusively establish the fact that he did so know and appreciate that fair-minded men cannot reasonably draw any other conclusion from the evidence? The plaintiff was justified in assuming, until otherwise advised, by his observation and experience, that the defendant's method of doing the blasting, its instructions and orders were safe, and that it was his duty to follow them. If his testimony is correct, he did only what he was directed to do. He was told not to use the battery unless the hole was fifteen feet in length, and to use the pole and lighted candle as he did. He was admonished to hasten his work, and to use short fuse, and not to wait too long before firing. Is it conclusive, from a consideration of all the conditions under which he was doing his work, as disclosed by the evidence, including his experience and the instructions and orders received by him, that he must have known and appreciated the danger of the fuse being lighted without his knowledge?

We are of the opinion that whether such was the case was made, by the evidence, a question for the jury, and not for the judge. We also hold that the question of his contributory negligence was also one to be decided by the jury, under proper instructions. It follows that the motions for a directed verdict and for judgment were properly denied.

2. This brings us to the question whether there were any reversible errors made on the trial which entitled the defendant to a new trial. The plaintiff called a witness who had had some ten years' service and experience in working at the business of stripping mines on the Range in different capacities, from steam shovel foreman to

superintendent. He testified generally as to the methods in use to explode dynamite in the work of gopher holing. He had never used nor seen used the defendant's method. He was then asked a hypothetical question, which recited the facts as to the method used by the defendant which the plaintiff's counsel claimed there was evidence to show, and concluded as follows: "What would you say as to whether, in your opinion, that was a safe and proper method of firing the gopher hole?" The only objection to the question was this: "Objected to as incompetent and no foundation laid." The objection was overruled, and the witness answered that he would not consider it safe.

The ruling is here urged as error, because the question did not embody substantially all the facts which the evidence tended to show as to the defendant's method. No such objection was made in the court below, and it cannot be here made for the first time; for if it had been made on the trial, and there was any merit in it, the omission in the question would have been supplied. Frigstad v. Great Northern Ry. Co., 101 Minn. 40, 111 N. W. 838.

It is further urged as a reason why this ruling was error that the subject-matter of the inquiry was not intricate, but easily understood by laymen without the assistance of opinion evidence; that the question called for an opinion upon a matter which it was the province of the jury to decide; and, further, that the witness was incompetent, because he had never used nor seen defendant's method. Expert evidence is admissible whenever the subject of inquiry is such that, in the judgment of the trial judge, persons not versed therein are liable to prove incapable of forming a correct judgment in the premises without such aid. It is not an objection to such evidence that it bears directly upon the issue to be determined by the jury. The trial judge has a wide discretion in the application of the rule. The competency of a witness offered as an expert is a question addressed to the sound discretion of the trial judge. Anderson v. Fielding, 92 Minn. 42, 99 N. W. 357, 104 Am. St. 665; Beardsley v. Minneapolis St. Ry. Co., 54 Minn. 504, 56 N. W. 176; Sieber v. Great Northern Ry. Co., 76 Minn. 269, 79 N. W. 95.

We are of the opinion that the witness was competent. The mere

fact that he had never, in his extended experience, used or seen used the alleged unsafe method used by the defendant, did not disqualify him; for, otherwise, no witness, however skilled or experienced, would be competent if he had not seen used, or himself used, an alleged unsafe method. The court did not err in holding that expert evidence was admissible on the question.

Several other alleged errors are assigned and urged. They relate to the rulings of the trial court as to the admission of evidence, and its instructions to the jury, and refusal to give requested instructions. We have considered each of them, and find no reversible error in any of them.

Order affirmed.

SIMPSON, J., dissents.

JAGGARD, J., took no part.