# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA.

## WILLIAM McMAHON v. ILLINOIS CENTRAL RAILROAD COMPANY.[1]

### July 24, 1914.

### Nos. 18,799—(272).

**Negligence — verdict sustained by evidence.**
  1. Plaintiff was run over by a freight train of defendant. He testified that he was ordered by the conductor to go under the train to fix something that was dragging, and that while he was under the car for that purpose the conductor started the train without notice to him. This story is denied by the conductor. Some of the circumstances corroborate plaintiff. The evidence is sufficient to sustain the jury's finding that plaintiff's injury was caused by the negligence of the conductor.

**Charge to jury.**
  2. An instruction that the violation of a penal statute, as to starting trains without signal, constituted a breach of duty owed by defendant to plaintiff, could not prejudice defendant where the employee on whom the statute imposes the duty of giving the signal is the engineer and the finding of the jury negatives negligence on the part of the engineer.

[1] Reported in 148 N. W. 446.

127 M.—1.

**Same — refusal to charge.**

3. There was no error in charging the jury that, unless plaintiff was injured while under the car fixing a broken brake rod, there is no evidence as to how the accident happened, nor in refusing to charge that if he was not under the car for that purpose the verdict must be for the defendant. There was no theory advanced on the trial that the accident happened in any other manner, and the conduct of all parties has conceded that at the time plaintiff was injured he was under the car for the purpose claimed by him.

**Offer to prove custom.**

4. An offer of evidence that on other roads it is customary for a trainman, before going under a train, to personally notify the engineer, was properly rejected since defendant's witnesses testified that personal notice to the engineer was not required on this division of defendant's road if the conductor was notified.

**A train "on the road."**

5. A train made up ready for travel, in charge of a road crew, overdue to start, and which has attempted to leave the station, but is unable to make a heavy grade without application of additional power, which, however, is right at hand, is a train "on the road" as distinguished from a train "standing in a yard."

**Damages not excessive.**

6. The damages awarded are not excessive.

Action in the district court for Ramsey county to recover $81,000 for personal injury received while in the employ of defendant. The answer denied that plaintiff was ordered by defendant or any of its agents to go under the train for the purpose of making any repairs, and denied that defendant or its agents had any notice of the fact that plaintiff was under the train and alleged that the accident was caused wholly by plaintiff's negligence in going under the train without taking any precaution to see that it was not moved while he was thereunder. The case was tried before Orr, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict for $39,000 in favor of plaintiff. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Butler & Mitchell,* for appellant.

*Henry Mahoney, Humphrey Barton* and *Walter D. Corrigan,* for respondent.

HALLAM, J.

Plaintiff was a brakeman on one of defendant's trains. On the morning of October 16, 1912, he was run over and terribly injured. On the trial plaintiff had a verdict. Defendant appeals from an order denying its motion for a new trial.

1. Defendant contends that the evidence is not sufficient to sustain the verdict. The facts are as follows: Plaintiff's crew was about to take a train of 70 cars from Amboy to Clinton, in Illinois. The train was made up and started slowly. The grade was heavy and the train stalled and backed up again, apparently to get a fresh start. Plaintiff's story is that, about the time the train commenced to back up he saw marks on the ground indicating that something was dragging; that the following conversation between himself and the conductor, Edward Burns, then occurred: "I said: 'There is something dragging, Eddie.' * * * He said: 'Now we'll back up, and I'll stand here and watch and point out to you the car that is dragging, and you hurry up and fix it and we'll wait until you get it fixed.' And we both gave a back-up signal * * * . I stood and hung out the side of the caboose and watched Burns, and he was looking down at the cars, and he pointed and hollered and he said: 'There it is on that B. & O.' and I hollered 'All right, I'll fix it.'" Plaintiff testified that when the train stopped he took a wrench, got under the car, found a brake rod broken, and proceeded to detach it. While he was so engaged the train started, upon signal from the conductor, without warning to plaintiff, and he was injured. The conductor denies the above conversation *in toto*.

Plaintiff's case hangs on the truth of this story. The court in his charge so limited the issues. The charge reads as follows:

"If you are satisfied * * * that the conductor did give this order and that in the exercise of reasonable care the brakeman did undertake to make these repairs or to go under the car, and that the conductor gave a signal (to start) without any information from the flagman * * * or without knowing that he was in a place of safety, his act would be one of negligence," but that "if * * * he went there without being told by conductor Burns to do so and without notifying the conductor or the engineer of the fact that he

intended to do so, he would then be the cause of his own injuries and could not recover."

The question presents only an issue of fact, which the jury resolved in favor of the plaintiff. The evidence is sufficient to sustain the verdict. One of these men testified falsely. The jury could tell better than we which told the truth. Some circumstances tend to corroborate plaintiff. It is strange that plaintiff, an experienced railroad man, should have gone under this car in the manner he did if no conversation had occurred. It is a fact that after backing the train the conductor allowed it to remain standing for several minutes during which time he left the train and went to the round-house 1,000 feet away. Subsequent inspection discovered the fact that there was a "B. & O." car in the train with a broken rod. Its dragging would make a mark that could be seen, and it required immediate attention. The conductor reported to his employer two days later that plaintiff was injured while removing this brake rod, and that plaintiff could have prevented the accident by "having understanding with engine crew," and further reported that plaintiff "apparently thought he had time to get under car and remove rod." Considering the positive testimony of plaintiff and all the attendant circumstances, we must hold the evidence sufficient to sustain a verdict for the plaintiff.

2. Much stress·is laid upon the fact that the court charged the jury in substance that the violation of a certain penal statute of Illinois constituted a breach of legal duty owed by defendant to plaintiff, and that it might be considered as bearing on the question of defendant's negligence. This statute reads as follows:

"STARTING TRAIN WITHOUT SIGNAL: If any engineer on any railroad shall start his train at any station or within any city, incorporated town or village, without ringing the bell or sounding the whistle a reasonable time before starting he shall forfeit a sum not less than $10.00 nor more than $100.00 to be recovered in an action of debt in the name of the People of the State of Illinois and such corporation shall also forfeit a like sum to be recovered in the same manner." (Hurd's Rev. St. [Ill.] 1913, c. 114, § 70).

Defendant contends that this statute was intended for the pro-

tection of the public, such as persons at crossings, and not for employees, and that the charge was erroneous. It is not necessary to determine whether the ruling of the court was correct because, if it was erroneous, the error was without prejudice. The statute, so far as it imposes a duty at all, imposes that duty on the engineer. It could have bearing only on the negligence of the engineer. Had the jury found the engineer negligent, then the question of the correctness of the court's construction of this statute would have been material. But the jury did not find the engineer negligent. In response to an instruction that if they found for the plaintiff, and that the accident was due to and caused by the negligence of a fellow-servant or co-employee or employees, "you must name in your verdict the fellow-servant or servants of the plaintiff whose negligence caused the accident." The jury returned this verdict: "Employee found to be negligent, E. F. Burns, conductor." This is tantamount to a finding that the engineer was not negligent and it renders immaterial any instruction which pertained only to the negligence of the engineer.

3. Defendant assigns as error the charge of the court that the contention of plaintiff that he was injured while under the car fixing a broken brake rod "is the only contention as to how this accident happened, and unless it happened under those conditions, there is no evidence as to how it may have happened," and in refusing to charge: "If you believe from the evidence that at the time of the accident the plaintiff was not in fact under the cars for the purpose of fixing the broken brake rod, your verdict must be for the defendant." Defendant's contention is: "There is abundant circumstantial evidence that he may not have gone under the cars at all to fix the brake rod;" that it is more probable that plaintiff must have started between the cars and accidentally fallen between them.

We agree with the trial court that if the accident did not happen while plaintiff was under the car fixing the brake rod, the record presents no evidence as to how it did happen. No witness suggests any other theory. More than this, the conduct of all parties from start to finish concedes the fact that plaintiff was injured while under this car for the purpose mentioned. The conductor, who knew

more about the happening of the accident than any other man but plaintiff himself, so reported two days after the accident, and he testified on the stand that he had no doubt plaintiff was under the train but that he did not know it at the time. Defendant's answer in like manner concedes this fact and makes plaintiff's conduct in going under the train the basis of a charge of contributory negligence. Notwithstanding all this, it would seem from the whole charge, taken together, that the question whether this part of plaintiff's story was true, was submitted to the jury in connection with the question whether the circumstances of his injury were as he claimed. There was no error either in the instruction given or in the refusal to charge as defendant requested on this point.

4. Defendant assigns as error the refusal of the court to receive proof that on other railroads it was always customary before a trainman went under a train, to personally notify the engineer, and to receive from the engineer personal acknowledgment of notice that the trainman was going under the train.

Proof of custom is some evidence as to whether an act is negligent. What is usually done may be evidence as to what ought to be done. General custom is not, as a matter of law, in itself due care, but it is proper to show that the act claimed to be negligent was not done in the usual mode of doing such things, for the amount or degree of care required by men in general in similar circumstances is the test of ordinary care. Steffenson v. Chicago, M. & St. P. Ry. Co. 51 Minn. 531, 53 N. W. 800; Kelly v. Southern Minn. Ry. Co. 28 Minn. 98, 9 N. W. 588; Armstrong v. Chicago, M. & St. P. Ry. Co. 45 Minn. 85, 47 N. W. 459; Wiita v. Interstate Iron Co. 103 Minn. 303, 308, 309, 115 N. W. 169, 16 L.R.A.(N.S.) 128. These principles are well settled, but, applying them to this case, we cannot see that the rejected testimony would have been of any assistance to the jury, *first,* because the conditions in the case were peculiar by reason of the express order given by the conductor in this case, and, *second,* because it affirmatively appears from the testimony of several of defendant's witnesses that, whatever may have been the custom elsewhere, the custom on this particular division of the Illinois Central Railroad was not in accordance with the testi-

mony offered. The conductor and engineer on this train, and another witness who had been for 18 years a conductor on this same division, all witnesses for defendant, testified that it was the custom of employees to notify the *conductor or the engineer* before going under cars, notification to the conductor being deemed sufficient. In this case, if plaintiff's story is true, the conductor not only had notice, but directed the act to be done. There was no error in exclusion of this testimony.

5. The remaining assignments of error relate to the court's construction of a rule of defendant, known as rule 820. This rule provides that "Conductors must inspect the running gear and brake and draft rigging of trains as often and as closely as practicable while on the road, require their men to assist in such inspection, remedy as far as possible any defects discovered, and remove from the train cars which are unsafe to run." Defendant requested the court to charge the jury that this rule "does not require the conductor or members of his train crew to remedy defects while the train is standing in a yard where car repairers are employed and on duty for the purpose of making repairs." The yard at Amboy was such a yard. The court declined to give this request, but instead, after reading the rule, said: "This applies to being on the road and there has been testimony here relative to what 'on the road' means in the operation of trains. This means, as closely as practicable, and not absolutely. That is, what is reasonable under all the circumstances." Both the instruction and the refusal to charge are assigned as error. This whole subject could have no very important bearing on the case. If the conductor did order plaintiff under the car and then did give a signal to go ahead while plaintiff was obeying this order, defendant could not be heard to say that its duty toward plaintiff was diminished by the fact that the order he was obeying was unusual and one which he was not required by any rule to obey. If defendant's construction of this rule was correct, and it does not apply to such a train as this was, the fact is important only as throwing light on the probability of the story of plaintiff that the conductor ordered him under the car. We, however, find no error, technical or otherwise, either in the instruction given or

in the failure to give the instruction asked. We think this train was "on the road" as that term was used in the rule. It was fully made up, ready for travel, was in charge of a road crew, was due to start, past due in fact, had already made the attempt to leave the station, and was only prevented from doing so by insufficient motive power. The opinion testimony of brakeman Cummings fully confirms this view.

6. The damages are not excessive. Plaintiff suffered the loss of both arms and the virtual loss of a leg. The jury awarded $39,000. It is conceded that this amount, though very large, is not excessive, unless defendant is entitled to some deduction under the Federal law on account of the contributory negligence of the plaintiff. It is contended, however, that plaintiff was guilty of negligence as a matter of law, and that some deduction must accordingly be made. We cannot so hold. If plaintiff's story as to the orders given him by the conductor, which necessitated his going under the car, was true, the jury might find that plaintiff was not negligent at all. They found this story true when they returned their verdict for plaintiff.

Order affirmed.