# JOHN STASH v. GREAT NORTHERN RAILWAY COMPANY.[1]

February 5, 1915.

Nos. 18,979—(204).

**Injury to servant — evidence of negligence.**

1. Evidence *held* sufficient to sustain a finding that defendant was negligent in failing to furnish plaintiff, its servant, with a safe place in which to work, in that it did not cleat the lower end of a running board bridging an open space between a platform and a car and over which plaintiff was required to wheel a truck while unloading the car, whereby the board slipped as he was passing over it and he was injured.

**Damages.**

2. Verdict for $7,000, reduced by the trial court to $6,000, for injuries to plaintiff's knee, sustained as reduced.

Action in the district court for Ramsey county to recover $26,702 for injuries received while in defendant's employ. The case was tried before Quinn, J., and a jury which returned a verdict in favor of plaintiff for $7,000. Defendant's motion for judgment notwithstanding the verdict was denied. Its motion for a new trial was granted, unless plaintiff consented to a reduction of the verdict to $6,000. From the order denying its motion for judgment, notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*M. L. Countryman* and *A. L. Janes,* for appellant.

*O'Malley & O'Malley,* for respondent.

PHILIP E. BROWN, J.

This is an action to recover damages for personal injuries alleged to have been caused by defendant's negligence. Plaintiff had a verdict. Defendant appealed from an order denying its alternative motion.

Plaintiff suffered the injuries complained of while employed by

[1] Reported in 151 N. W. 124.

defendant as a trucker in its yards at St. Paul. His duties required him to remove freight with a truck from one car to and over an adjacent platform into other cars. At the time of the accident he was engaged in unloading a car, the floor of which was from 12 to 18 inches lower than the platform. Defendant had bridged the space, of some 15 to 18 inches, between the car and the platform with an iron running board, weighing between 80 and 90 pounds, about 40 inches long, 35 inches wide, and three-sixteenths of an inch thick, bent at one end. While plaintiff, on the third day of his employment, in the performance of his duties, was wheeling his empty truck from the platform into the car over the running board, the latter slipped out of place and fell to the ground, with him beneath it, fracturing his knee cap.

1. The only negligence charged or claimed was defendant's failure to furnish plaintiff a reasonably safe place in which to work, in that it did not cleat the lower end of the running board so as to prevent it from slipping or getting out of place. It is admitted that it was not cleated or otherwise secured except by its weight and shape; and, further, that if a cleat had been placed on the floor of the car at its lower end such would have prevented it from slipping and the accident would not have occurred. Defendant, however, asserts there was no actionable negligence on its part, this contention being based upon the following: The running board had a bend at one end which rested on the platform, so that when a trucker came into the car with an empty truck the weight of the plank held it in place and prevented it from slipping towards the car, there being in such case no jar, shove or push on the plank such as occurred when a load was taken up it; further, that for many years such planks had been used in defendant's yards under like circumstances, without being cleated; that there was no evidence tending to show that a failure to use a cleat created a dangerous condition or affirmative proof that the running board was either likely to or ever had slipped previously, or that any accident of the kind had theretofore occurred. On the other hand a running board like the one in use at the time of the accident was exhibited to the jury, and it appeared that defendant's custom was to cleat such

boards when loading cars; this difference of custom being referred to the fact that cars remained stationary when being loaded, whereas those being unloaded were frequently switched about. There was no evidence whether running boards had ever previously slipped or not, or whether accidents had or had not theretofore occurred in connection with their use, or what the practice of other railway companies was with reference to cleating runways.

We confess inability to see more in defendant's defense of its failure to use cleats when unloading cars, than a claim of inconvenience. Furthermore, it is clear that, notwithstanding the fact that in the course of unloading cars they were frequently moved from place to place, thus necessitating temporary removal of the running board, this could easily have been done with a cleat in place. That there was danger of a running board slipping if not secured by a cleat, was recognized in the use of cleats when loading cars, and likewise proved by the accident which in fact occurred.

With reference to defendant's other claims, it is sufficient to say that compliance even with a general custom does not, of itself, constitute due care. McMahon v. Illinois Central R. Co. 127 Minn. 1, 148 N. W. 446; 2 Dunnell, Minn. Dig. § 7049. Neither can custom or usage justify a negligent act. Boos v. Minneapolis, St. P. & S. S. M. Ry. Co. 127 Minn. 381, 149 N. W. 660. Nor is mere lack of evidence regarding previous slipping of running boards, or of accidents so caused, persuasive of the absence of negligence.

We hold the question of defendant's negligence was for the jury.

2. Were the damages excessive? The verdict was for $7,000, which the trial court reduced to $6,000. Plaintiff, when injured, was a healthy, strong, vigorous laboring man, 24 years old. He had no trade, and his earning capacity was not shown. He was confined in bed for three months, during part of which time he had to have several nurses and suffered intense pain, the latter continuing to some extent until the trial. He had several operations on his knee, which, by reason of his condition at such time, he was compelled to undergo without the administration of anaesthetics; and it was necessary to keep his leg in a cast for several months. The final result was that the functions of the knee joint were destroyed

and it became permanently stiffened. His hospital and nurses' bills incurred amounted to $577, and the jury might have found his indebtedness to his physician to be $750; which would reduce the general damages to less than $4,700. We do not regard this amount as justifying interference with the verdict.

Order affirmed.